UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| BRENTLINGER ENTERPRISES D/B/A MAG VOLVO OF DUBLIN | ) ) | Civil Action No. 2:14-cv-360 |
| | ) | JUDGE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| VOLVO CARS OF NORTH AMERICA, LLC | ) | **(Jury Demand Requested)** |
| | ) | |
| Defendant. | ) | |

Plaintiff Brentlinger Enterprises d/b/a MAG Volvo of Dublin ("Plaintiff" or "MAG Volvo"), by its attorneys, Morganstern, MacAdams & DeVito Co., L.P.A. and Bellavia Blatt Andron & Crossett, P.C., complaining of the Defendant Volvo Cars of North America, LLC ("Defendant" or Volvo"), alleges as follows:

**JURISDICTION AND VENUE**

**1.** This Court possesses jurisdiction over this action pursuant to (a) 28 U.S.C. Section 1332(a), by virtue of the diversity of citizenship between Plaintiff and Defendant and the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs and (b) pursuant to 28 U.S.C. Section 1331 because this Court has original jurisdiction of all civil actions arising under the laws of the United States (*i.e., among other statutes,* U.S.C.A. 1221, et seq.).

**2.** Venue is proper in this District pursuant to 28 U.S.C. Section 1391(a) because the Plaintiff's place of business is located in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.

**3.** This Court has supplemental jurisdiction over the pendent state law claims herein pursuant to 28 U.S.C. § 1367.

## PARTIES

4.      At all times hereinafter mentioned, MAG Volvo was and is a corporation duly organized and existing under the laws of the State of Ohio with offices located at 6335 Perimeter Loop Road, Dublin, Ohio 43017.

5.      Upon information and belief, at all times hereinafter mentioned, Defendant Volvo was and is a corporation duly organized and existing under the laws of the State of Delaware that is duly authorized to do business in the State of Ohio as a foreign limited liability company with an Ohio Entity Number 1345708 and statutory agent being CT Corporation System, 1300 East 9th Street, Cleveland, Ohio 44114.

6.      Upon information and belief, at all times hereinafter mentioned, Volvo is a manufacturer and distributor for retail sale, through its authorized franchised dealers, of Volvo new motor vehicles, parts, and accessories.

7.      At all relevant times, MAG Volvo was and still is engaged in the business of operating an automobile dealership selling and servicing, among other things, Volvo new motor vehicles.

8.      MAG Volvo was and is an authorized sales and service dealer of Volvo vehicles, having entered into an automotive dealer agreement with Volvo effective October 31, 2007 (the "Dealer Agreement").  (See attached Ex. 1).

## FACTS COMMON TO ALL CLAIMS

9.      This action arises out of, among other things, the Defendant's illegal dealer policy or plan known as the Volvo Facility Investment initiative.

10.      The Defendant's illegal incentive program implements an impermissible and discriminatory pricing scheme that severely prejudices and damages Plaintiff and wrongfully

benefits, among others, Volvo dealers neighboring and competing with Plaintiff for the sale of Volvo motor vehicles.

11.     The Defendant's illegal incentive program (the "Illegal Incentive Program") (a) violates the Ohio Dealer Act, R.C. Chapter 4517 ("ODA") and the Federal Automobile Dealer's Day in Court Act ("ADDCA") and (b) as applied to Plaintiff, constitutes a breach of the common law duties of good faith and fair dealing implied covenants contained in the parties' dealer agreement as well a breach of fiduciary duties owed by Defendant to Plaintiff.

12.     The Illegal Incentive Program provided, and provides discriminatory payouts to dealers whose facilities meet certain standards defined by Volvo.  Stated otherwise, the amount of money a dealer can earn from Volvo from the Illegal Incentive Program is based on:  (a) their facility definition, as defined by Volvo (i.e, universal, shared, dedicated or exclusive) and (b) meeting certain Volvo brand imaging requirements.

13.     To qualify for the Illegal Incentive Program, a dealer must have (a) completed their Volvo facility to certain Volvo design standards and (b) met certain Volvo brand imaging requirements, and thereafter, the payments made to the dealer under the Illegal Incentive Program are determined by the level of exclusivity the facility provides.

14.     When Plaintiff opened its Volvo facility less than two years ago, and prior to Defendant's enactment of the Illegal Incentive Program, it was trumpeted by Volvo as an example of how dealers were investing in the Volvo brand.

15.     Plaintiff spent three years and $9 million dollars planning and building its new facility to comport with Volvo's design standards in place at the time.

16.     In the face of Plaintiff's commitment to the Volvo brand, Defendant's Illegal Incentive Program effectively renders Plaintiff's facility a detriment to its business less than two years after it was built.

17.     MAG Volvo, a dealer who has invested millions and considerable time and effort into constructing its facility, with the consent and approval of Defendant, is detrimentally impacted as a result of the Illegal Incentive Program.

18.     As a result of Plaintiff's investment, Volvo has been designated as "shared" under the Illegal Incentive Program.

19.     The Illegal Incentive Program is unlawful because its application has a disparate effect on Volvo dealers. Specifically, it precludes certain Volvo dealers, such as MAG Volvo, from fairly competing with neighboring and/or competing Volvo dealers where it creates a price discrepancy on vehicles in the dealers' existing inventories.

20.     The Illegal Incentive Program, however, was and is flawed and the result is that the program incentives are not available to Plaintiff on a proportionally equal basis as they are to other Volvo dealers, such as Plaintiff's neighboring and/or competing Volvo dealers.

21.     Under the Illegal Incentive Program, certain Volvo dealers, such as certain of Plaintiff's neighboring and/or competing Volvo dealer, are treated more favorably than others, like Plaintiff, resulting in a discriminatory pricing scheme.

22.     The Volvo dealers treated more favorably under the Illegal Incentive Program, such as certain of Plaintiff's neighboring or competing Volvo dealer, are able to effectively, purchase and sell certain new Volvo vehicles at substantially lower prices than those purchased and sold by Volvo dealers, such as Plaintiff.

23.     This price discrimination equips certain Volvo dealers, such as certain of Plaintiff's neighboring or competing Volvo dealers, with a substantial and unfair competitive price advantage over other Volvo dealers (such as Plaintiff) – for example, certain of Plaintiff's neighboring or competing Volvo dealer can undercut the Plaintiff's price with no impact on its bottom line, or pocket the difference as additional profit, or do a little of both.

24.     Plaintiff finds itself, as a result of the Illegal Incentive Program, in a vicious spiral, as Plaintiff's neighboring or competing dealers cannot only sell new Volvo's at prices that undercut Plaintiff, but also earn further discriminatory bonuses and incentives from other Volvo programs.

25.     Plaintiff finds itself, as a result of the Illegal Incentive Program, in a vicious spiral, as Plaintiff's neighboring or competing dealers cannot only sell more new Volvos due to their ability to undercut Plaintiff, but also exponentially earn more illegal incentive bonus money from Volvo based upon the number of qualifying vehicles they sell.

26.     Plaintiff is at a financial disadvantage with regard to the price it effectively pays when applying the payments received from the Illegal Incentive Program, for certain new Volvo vehicles.

27.     The Illegal Incentive Program is flawed in that the criteria used by Volvo to calculate or measure the monies received by Plaintiff from Volvo pursuant thereto are based upon criteria that favors certain Volvo dealers, such as certain of Plaintiff's neighboring or competing Volvo dealer, over other Volvo dealers, such as Plaintiff.

28.     The Illegal Incentive Program is flawed in that, among other things, qualifies Volvo dealers or makes Volvo dealers eligible to receive a "Facility Initiative Per Unit Payout" on certain Volvo retail vehicles based upon their facility definition ("Facility Tier") determined by Volvo and whether they have met certain Volvo brand imaging requirements.

29.     While Volvo will certainly argue that the Illegal Incentive Program may seem facially neutral, it is quite obviously designed to benefit certain dealerships with stand-alone, newer and/or larger facilities by rewarding them for meeting certain exclusivity and design standards set forth by Volvo.

30.     In the case of MAG Volvo, where it is classified as "Shared", it will only earn, for the years 2014, 2015, and 2016, $250.00 as a Facility Initiative Per Unit Payout with respect to certain Volvo retail vehicles under the terms of the Illegal Incentive Program.

31.     In contrast, if it were classified as "Exclusive," Plaintiff would earn $500.00 as a Facility Initiative Per Unit Payout with respect to certain Volvo retail vehicles under the terms of the Illegal Incentive Program.

32.     The result of this tiered pricing structure is that Volvo dealers with a better classification (i.e., "Exclusive") are effectively able to purchase and sell new Volvo vehicles at substantially lower prices than the same vehicles purchased and sold by Volvo dealers with a lesser classification (i.e., "shared," "dedicated" or "universal/non-branded").

33.     This price discrimination equips certain Volvo dealers with a substantial and unfair competitive price advantage over other Volvo dealers.

34.     A dealer classified as "Exclusive" under the Illegal Incentive Program can undercut the price of various Volvos on its lot with no impact on its bottom line, or simply pocket the payment received from Volvo as additional profit (or both).

35.     The Illegal Incentive Program affords dealers treated more favorably under the program, such as certain of Plaintiff's neighboring or competing Volvo dealers, to a $250.00 per vehicle advantage over certain Volvo dealers, such as Plaintiff.

36.     Plaintiff is further damaged by the Illegal Incentive Program because certain of its neighboring or competing dealers can not only sell new Volvo's at prices that undercut Plaintiff, but also earn further discriminatory bonuses and incentives from other Volvo programs.

37.     Plaintiff is a substantial financial disadvantage with regard to the price it effectively pays, when applying the payments received from the Illegal Incentive Program, for new Volvo vehicles.

**38.** The Illegal Incentive Program dramatically discriminates in favor of Plaintiff's neighboring and/or competing dealers and allows such neighboring dealer to reap enormous, discriminatory benefits and incentives which threaten the profitability and going concern value of Plaintiff.

**39.** Plaintiff, as a result of the Illegal Incentive Program, cannot compete on a level playing field with Volvo dealers that are discriminatorily favored under the Illegal Incentive Program, such as certain of its neighboring and/or competing Volvo dealers.

**40.** As a remedy, Plaintiff seeks, among other things, damages and permanent injunctive relief enjoining Defendant from continuing to implement its Illegal Incentive Program in a manner which disadvantages Plaintiff vis-a-vis other Volvo dealers.

**41.** The actions on the part of Volvo toward MAG Volvo are tantamount to a termination and/or constructive termination of the Dealer Agreement without due cause.

## FIRST CLAIM

### (Violation of § 4519.54(A) of the Ohio Revised Code)

**42.** MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 41 as if each were more fully set forth at length herein.

**43.** Ohio Revised Code Chapter 4517 concerns, among other things, the relationship between motor vehicle franchisors (manufacturers) and motor vehicle franchisees (dealers) and is commonly referred to as the Ohio Dealers Act ("ODA").

**44.** The ODA provides statutory protections for motor vehicle franchisees in their dealings with motor vehicle franchisors.

**45.** MAG Volvo is both a "new motor vehicle dealer" and "franchisee" within the meaning of the ODA.

**46.** Volvo is both a "manufacturer" and "franchisor" within the meaning of ODA.

7

47.     The Dealer Agreement between Volvo and MAG Volvo is a "franchise" within the meaning of the ODA. (See Ex. 1).

48.     Section 4517.54(A) of the ODA provides in relevant part that: "(A) Notwithstanding the terms, provisions, or conditions of an existing franchise, no franchisor shall terminate, cancel, or fail to continue or renew a franchise except for good cause."

49.     The actions of Volvo have and will result in significant and substantial damages to be sustained by MAG Volvo, including the destruction of MAG Volvo's business.

50.     The above-actions by Volvo are restrictions upon MAG Volvo's right to own and operate a Volvo franchised dealership and will devastate MAG Volvo's parts, service and sales business.

51.     The above actions on the part of Volvo toward MAG Volvo are tantamount to a constructive termination of the Dealer Agreement without due cause.

52.     Volvo's bad faith conduct and wrongful acts as set forth above violate Section 4517.54(A) of the ODA.

53.     Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

54.     MAG Volvo has been aggrieved by Volvo's violations of the ODA.

55.     MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

56.     MAG Volvo has and will incur attorneys' fees, costs, and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

57.     As a result of Volvo's violation of Section 4517.54(A) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

## SECOND CLAIM

### (Violation Of § 4517.59(A)(1) Of The Ohio Revised Code)

58.     MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 57 as if each were more fully set forth at length herein.

59.     Ohio Revised Code Section 4517.59(A)(1) states in relevant part:

"(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

(1) In acting or purporting to act under the terms, provisions, or conditions of a franchise or in terminating, canceling, or failing to renew a franchise, fail to act in good faith... ."

60.     Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 4517.59(A)(1) of the ODA.

61.     Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

62.     MAG Volvo has been aggrieved by Volvo's violations of the ODA.

63.     MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

64.     MAG Volvo has and will incur attorneys' fees, costs, and expenses in connection with its enforcement of its rights under the ODA, for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

65. As a result of Volvo's violation of Section 4517.59(A)(1) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

### THIRD CLAIM

### (Violation Of § 4517.59(A)(6) Of The Ohio Revised Code)

66. MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 65 as if each were more fully set forth at length herein.

67. Ohio Revised Code Section 4517.59(A)(6) states in relevant part:

> "(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall [not] (6) ..."employ any coercive techniques for any other purposes such as obtaining franchisee participation in contests, "giveaways," or other sales devices."

68. Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 457.59(A)(6) of the ODA.

69. Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

70. MAG Volvo has been aggrieved by Volvo's violations of the ODA.

71. MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

72. MAG Volvo has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

**73.** As a result of Volvo's violation of Section 4517.59(A)(6) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

## FOURTH CLAIM

### (Violation Of § 4517.59(A)(8) Of The Ohio Revised Code)

**74.** MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 73 as if each were more fully set forth at length herein.

**75.** Ohio Revised Code Section 4517.59(A)(8) states in relevant part:

"(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

(8) Fail or refuse to make equally available to its same line-make franchisees all motor vehicles, motor vehicle parts, or other products manufactured for that line-make at the same actual price, or to utilize any device including, but not limited to, sales promotion plans or programs that result in such lesser actual price. Division (A)(8) of this section shall not apply to sales to a franchisee for resale to any unit of government or donation or use by a franchisee in a driver education program. Division (A)(8) of this section shall not prohibit the offering of incentive programs or other discounts so long as such incentives or discounts are reasonably available to all franchisees in this state on a proportionately equal basis and are based on the sale of individual vehicles and not increased for meeting a performance standard unless the standard is reasonable considering all existing circumstances."

**76.** Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 4517.59(A)(8) of the ODA.

**77.** Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

**78.** MAG Volvo has been aggrieved by Volvo's violations of the ODA.

11

79. MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

80. MAG Volvo has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

81. As a result of Volvo's violation of Section 4517.59(A)(8) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

## FIFTH CLAIM

### (Violation Of § 4517.59(A)(15) Of The Ohio Revised Code)

82. MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 81 as if each were more fully set forth at length herein.

83. Ohio Revised Code Section 4517.59(A)(15) states in relevant part:

"(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

(15) Engage in any predatory practice or discriminate against any new motor vehicle dealer including discriminating against a franchisee, as compared to a same line-make franchisee, with regard to… dealership facility requirements... ."

84. Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 4517.59(A)(15) of the ODA.

85. Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

86. MAG Volvo has been aggrieved by Volvo's violations of the ODA.

87.     MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

88.     MAG Volvo has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

89.     As a result of Volvo's violation of Section 4517.59(A)(15) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

## SIXTH CLAIM

### (Violation Of § 4517.59(A)(23) Of The Ohio Revised Code)

90.     MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 89 as if each were more fully set forth at length herein.

91.     Ohio Revised Code Section 4517.59(A)(23) states in relevant part:

"(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

(23) Require, coerce, or attempt to coerce any new motor vehicle dealer in this state to change location of the dealership, or to make any substantial alterations to the dealership premises or facilities, when to do so would be unreasonable, or without written estimation of a sufficient supply of new motor vehicles so as to justify the location change or alterations, in light of the current market and economic conditions... ."

92.     Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 4517.59(A)(23) of the ODA.

93.     Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

**94.**     MAG Volvo has been aggrieved by Volvo's violations of the ODA.

**95.**     MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

**96.**     MAG Volvo has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

**97.**     As a result of Volvo's violation of Section 4517.59(A)(23) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

<u>**SEVENTH CLAIM**</u>

**(Violation Of § 4517.59(A)(25) Of The Ohio Revised Code)**

**98.**     MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 97 as if each were more fully set forth at length herein.

**99.**     Ohio Revised Code Section 4517.59(A)(25) states in relevant part:

"(A) Notwithstanding the terms, provisions, or conditions of any agreement, franchise, or waiver, no franchisor shall:

(25) Unreasonably require a franchisee to establish or maintain exclusive sales facilities, sales display space, personnel, service, parts, or administrative facilities for a line-make, unless such exclusivity is reasonable and otherwise justified by reasonable business considerations. In making that determination, the franchisor shall take into consideration the franchisee's satisfaction of facility requirements as required by the franchise agreement. The franchisor shall have the burden of proving that reasonable business considerations justify exclusivity."

**100.**     Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 4517.59(A)(25) of the ODA.

**101.**     Section 4517.65(A) of the ODA provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty

14

imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

102.    MAG Volvo has been aggrieved by Volvo's violations of the ODA.

103.    MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements, expert witness fees, reasonable attorneys fees, and any other costs incurred in this matter.

104.    MAG Volvo has and will incur attorneys' fees, expert witness fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

105.    As a result of Volvo's violation of Section 4517.59(A)(25) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

## EIGHTH CLAIM

### (Violation Of § 4517.59(B) Of The Ohio Revised Code)

106.    MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 105 as if each were more fully set forth at length herein.

107.    Ohio Revised Code Section 4517.59(B) states in relevant part:

"B) No franchisor shall discriminate among the franchisor's dealers in any program that provides assistance to the franchisor's dealers, including internet listings, sales leads, warranty policy adjustments, marketing programs, and dealer recognition programs. The franchisor shall not require a franchisee to provide its customer lists or service files to the franchisor, unless necessary for the sale and delivery of a new motor vehicle to a consumer, to validate and pay consumer or dealer incentives, or for the submission to the franchisor for any services supplied by the franchisee for any claim for warranty parts or repairs. Nothing in this division shall limit the franchisor's ability to require or use customer information to satisfy any safety or recall notice obligation."

**108.** Volvo's bad faith conduct and wrongful acts as set forth above, violates Section 4517.59(B) of the ODA.

**109.** Section 4517.65(A) of the Ohio Revised Code provides that "(A) When a franchisor does, causes, or permits to be done anything prohibited by this chapter, or fails to perform any duty imposed upon it by this chapter, the franchisor shall be liable to the franchisee in double the amount of actual damages sustained, plus court costs and reasonable attorney fees."

**110.** MAG Volvo has been aggrieved by Volvo's violations of the ODA.

**111.** MAG Volvo, pursuant to the ODA is entitled to an award, as against Volvo, of necessary costs and disbursements plus a reasonable attorney's fee.

**112.** MAG Volvo has and will incur attorneys' fees, costs and expenses in connection with its enforcement of its rights under the ODA for all of which sums, as determined and allowed by the Court, MAG Volvo is entitled to judgment as against Volvo.

**113.** As a result of Volvo's violation of Section 4517.59(B) of the ODA, MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

### NINTH CLAIM

**(Violation Of The Federal Automobile
Dealer's Day In Court Act – 15 U.S.C.A. 1221)**

**114.** MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 113 as if each were more fully set forth at length herein.

**115.** The ADDCA (15 U.S.C.A. 1221, et seq.) provides a dealer with a federal cause of action against an automobile manufacturer who has failed to act in good faith regarding a franchise.

116. MAG Volvo is an "automobile dealer" within the meaning of Section 1221(c) of the ADDCA.

117. Volvo is an "automobile manufacturer" within the meaning of Section 1221(a) of the ADDCA.

118. The Dealer Agreement between Volvo and MAG Volvo is a "franchise" within the meaning of Section 1221(b) of the ADDCA.

119. Volvo's bad faith conduct and wrongful acts as set forth above, violate 15 U.S.C.A. 1221, et seq.

120. As a result of Volvo's violation of 15 U.S.C.A. 1221, et seq., MAG Volvo has sustained and will sustain substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

## TENTH CLAIM

### (Injunction Pursuant To Federal Rules Of Civil Procedure § 65)

121. MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 120 as if each were more fully set forth at length herein.

122. Volvo's course of conduct, as set forth above, is, among other things, violative of the ODA and the ADCCA and in breach of the good faith and fair dealing implied in every contract.

123. In the event that Volvo is permitted to continue to implement it's impermissible and discriminatory pricing scheme in such a manner that its program incentives are not available to Plaintiff on a proportionally equal basis as they are to other Volvo dealers, such as certain of Plaintiff's neighboring and/or competing Volvo dealer, MAG Volvo will suffer the loss of its entire business, the Dealer Agreement will be terminated, MAG Volvo will go out of business and thus will suffer irreparable injury.

124.    As a direct and proximate result of the foregoing, Plaintiff is threatened with irreparable harm by the unlawful, discriminatory competitive advantages bestowed upon Plaintiff's neighboring and/or competing Volvo dealer by means of the Illegal Incentive Program.

125.    MAG Volvo has no adequate remedy at law.

126.    Pursuant to Federal Rules of Civil Procedure § 65, MAG Volvo is entitled to a permanent injunction enjoining and restraining Volvo from administering its Illegal Incentive Program in such an unlawful and discriminatory manner that its program incentives are not available to Plaintiff on a proportionally equal basis as they are to other Volvo dealers, such as Plaintiff's neighboring and/or competing Volvo dealer.

### ELEVENTH CLAIM

### (Breach of Good Faith and Fair Dealing)

127.    MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 126 as if each were more fully set forth at length herein.

128.    As a result of Volvo's bad faith conduct and wrongful acts as set forth above, Volvo breached the common law duties of good faith and fair dealing implied covenants contained in the Dealer Agreement.

129.    As a result of Volvo's breach of the implied covenants of good faith and fair dealing contained in the Dealer Agreement, MAG Volvo has sustained substantial damages in an amount to be determined at trial but in no event less than $180,000.00.

### TWELFTH CLAIM FOR RELIEF

### (Breach Of Fiduciary Duty)

130.    MAG Volvo repeats, reiterate and realleges all of the allegations contained in paragraphs 1 through 129 as if each were more fully set forth at length herein.

**131.**     The Dealer Agreement and the resulting franchise relationship between the parties (a) place Volvo in a position of disproportionate control, power, superiority, influence, and dominance over MAG Volvo, (b) require MAG Volvo to provide confidential and proprietary information to Volvo, creating a confidential relationship, and (c) make MAG Volvo dependent upon Volvo for economic survival, forcing MAG Volvo to repose special trust and confidence in Volvo.

**132.**     Pursuant to the Dealer Agreement and the resulting franchise relationship between the parties, Volvo controls most aspects of MAG Volvo's business and Defendant is permitted to terminate the Dealer Agreement for material breaches of most of the obligations imposed on Plaintiff therein.

**133.**     The aforementioned effects of the Dealer Agreement upon the relationship between the parties, and the obligations Volvo owes MAG Volvo as a result of the ODA and the ADDCA, establish a fiduciary relationship between Volvo and MAG Volvo.

**134.**     As a fiduciary, Volvo owes Plaintiff the highest degree of loyalty and good faith.

**135.**     The wrongful acts of Volvo, to the detriment of Plaintiff, as more fully described herein, including, constitute a breach of the fiduciary duties Volvo owes MAG Volvo.

**136.**     As a result of Volvo's conduct, MAG Volvo has sustained damages in an amount to be determined at trial but in no event less than $180,000.00.

**THIRTEENTH CLAIM FOR RELIEF**

**(Violation of Robinson-Patman Act, 15 U.S.C. Section 13(a))**

**137.**     MAG Volvo repeats, reiterates, and realleges all of the allegations contained in paragraphs 1 through 136 as if each were more fully set forth at length herein.

**138.**     The Robinson-Patman Act provides, in pertinent part, that:

19

It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price, between different purchasers of commodities of like grade and quality... where the effect of such discrimination may be substantially to lessen competition, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either.

139. Plaintiff possesses a claim arising under Sections 4 and 16 of the Clayton Act, 15 U.S.C. 15(A) and 26, based upon Defendant's violations of the Robinson-Patman Act, 15 U.S.C. 13(a).

140. Defendant is a motor vehicle manufacturer engaged in the sale of motor vehicles in interstate commerce.

141. The Volvo vehicles by Defendant to Plaintiff and its competitors are transported across state lines to Plaintiff and its competitors for resale to consumers.

142. By way of the Defendant's Illegal Incentive Program, Defendant has sold motor vehicles of like grade and quality in contemporaneous interstate sales to competitors of Plaintiff at lower prices than the prices at which those motor vehicles are sold to Plaintiff.

143. Plaintiff competes with other Volvo dealers located in the Ohio market who pay lower prices for Volvo motor vehicles as a result of the Illegal Incentive Program.

144. The effect of the Illegal Incentive Program has been substantially to lessen competition between and among Plaintiff and other Volvo dealers with which it competes.

145. The favored dealers who receive increased payments from Defendant by way of the Illegal Incentive Program have lowered their retail prices to reflect their lower acquisition cost, forcing Plaintiff to lose sales, reduce its margins, or both.

146. The higher payments provided by Defendant to "Exclusive" or "Dedicated" Volvo dealers under the Illegal Incentive Program is not functionally available to Plaintiff for the reasons stated herein above.

**147.**    The favored dealers who receive increased payments from Defendant by way of the Illegal Incentive Program provide no service or savings to Defendant which are not provided in identical kind by Plaintiff.

**148.**    Each affected dealer maintains an inventory of purchased vehicles on dealership property and competes to sell and service Volvo dealers in accordance with dealer agreements with Defendant.

**149.**    As a direct and proximate result of Defendant's violations of the Robinson-Patman Act, Plaintiff has suffered an injury to its business and property in the form of (a) lost sales to favored competitors and/or (b) lost profit margin in an attempt to prevent the loss of such sales.

**150.**    Plaintiff's injury is injury of the kind the Robinson-Patman Act was designed to prevent and flows from that which makes Defendant's conduct unlawful.

**151.**    Plaintiff demands entry of a judgment against Defendant (a) declaring that GM has violated the Robinson-Patman Act, 15 USC 13(a) by and through its continued implementation of discriminatory price discounts by way of the Illegal Incentive Program (b) enjoining, pursuant to 15 USC 26, Defendant's continued implementation of discriminatory pricing through the Illegal Incentive Program (c) awarding treble damages pursuant to 15 USC 15(a) together with pre-judgment and post-judgment interest (d) awarding attorney's fees and costs pursuant to 15 USC 15(a) and 15 USC 26.

**(Jury Demand)**

**152.**    MAG Volvo demands a trial by jury by the maximum number allowed by law.

**WHEREFORE**, PLAINTIFF respectfully demands judgment as follows:

a)    On the First Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section

4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

b)      On the Second Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

c)      On the Third Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

d)      On the Fourth Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

e)      On the Fifth Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

f) On the Sixth Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

g) On the Seventh Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

h) On the Eighth Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing, pursuant to Section 4517.65(A) of the ODA, an amount equal to double the amount of actual damages sustained and reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ODA;

i) On the Ninth Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights under the ADDCA;

j) On the Tenth Claim for an injunction, pursuant to Federal Rules of Civil Procedure § 65, enjoining and restraining Volvo from administering its Illegal Incentive Program in such an unlawful and discriminatory manner that its program incentives are not available to Plaintiff on a proportionally equal basis as they are to other Volvo dealers, such as Plaintiff's neighboring Volvo dealer;

23

k)      On the Eleventh Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights;

l)      On the Twelfth Claim in an amount to be determined at trial but in no event less than $180,000.00 plus an amount to be determined by the Court representing reimbursement for Plaintiff's attorney's fees, expert witness fees, costs, and expenses in connection with the enforcement of its rights;

m)      On the Thirteenth Claim, (a) declaring that Defendant has violated the Robinson-Patman Act, 15 USC 13(a) by and through its continued implementation of the Illegal Incentive Program, (b) enjoining, pursuant to 15 USC 26, Defendant's continued implementation of discriminatory pricing through the Illegal Incentive Program, (c) awarding treble damages pursuant to 15 USC 15(a) together with pre-judgment and post-judgment interest, and (d) awarding attorney's fees and costs pursuant to 15 USC 15(a) and 15 USC 26;

n)      For the value of the costs and disbursements Plaintiff incurs in connection with this action, including the value of its attorneys' fees; and

o)      For such other relief as the Court may deem just, proper, and equitable.

Respectfully submitted,

*s/ Christopher M. DeVito*

Christopher M. DeVito (0047118)
**Morganstern, MacAdams & DeVito Co., L.P.A.**
623 West Saint Clair Avenue
Cleveland, OH 44113-1204
216.687.1212 - Office
216.621.2951 – Facsimile
DeVitoLaw@yahoo.com

Attorney for Plaintiff

## JURY DEMAND

A trial by jury with the maximum number of jurors permitted under Ohio law is hereby requested.

Respectfully submitted,

*s/ Christopher M. DeVito*

Christopher M. DeVito
**Morganstern, MacAdams & DeVito Co., L.P.A.**

Attorney for Plaintiff

**Dated:  April 18, 2014**

L:\CLIENTS-CMD\MAG-Brentlinger.Volvo.FedCt\2014.04.18.0.Complaint.Brentlinger-MAG.Volvo.doc